# COUNTY OF ADDISON,

#### AT THE

## JANUARY TERM, 1873.

PRESENT:

Hon. ASAHEL PECK,
Hon. HOYT H. WHEELER,
Hon. TIMOTHY P. REDFIELD, } Assistant Judges.
Hon. JONATHAN ROSS,

---

## Josiah S. Chandler *v.* The Town of Bristol.

### *Soldier's Bounty.    Contract.*

The defendant authorized its selectmen to offer a bounty of $225 to each volunteer, to fill its quota under a certain call. Afterwards, the orderly sergeant of the plaintiff's company in the field, wrote to R., one of the defendant's selectmen, in behalf of O., a member of the same company, inquiring what bounty the town would pay for volunteers, and R. replied that the town would pay $250. The plaintiff heard R.'s letter read in presence of his company, and, relying upon the statements thereof, and expecting to receive the bounty, re-enlisted to the credit of the defendant, reserving the right, and having the privilege, of changing his credit to any other town, before muster. Before muster, the plaintiff, learning that the town of S. was paying a larger bounty, directed the proper officer to change his credit to S., which was never done; but the plaintiff served till the close of the war, supposing he was credited to S. The plaintiff gave the defendant no notice of his enlistment to its credit, until after his discharge; but the defendant had the benefit of his credit.

*Held*, that the foregoing facts tended to show a contract between the plaintiff and the defendant.

*Held*, also, that the plaintiff's attempt to get his credit changed as aforesaid, did not prejudice his right of recovery against the defendant.

*Held*, also, that the fact that the "defendant received the benefit of the plaintiff's credit," —in the absence of any evidence that he applied on any other quota, or that the town had another quota,—tended to show that he applied on the quota named in said vote.

*Held*, also, that if the town suffered no damage for want of earlier notice of the plaintiff's enlistment to its credit, earlier notice was not necessary.

ASSUMPSIT for a town bounty. Plea, the general issue, and trial by jury., PIERPOINT, Ch. J., presiding.

The call of the president for 300,000 men, made Oct. 17, 1863, was admitted. It appeared that the quota of Bristol under said call was nineteen men. At a town meeting of said Bristol, duly warned, and held on the 28th day of November, 1863, the town voted to authorize the selectmen to offer a bounty of $225 to each volunteer, not exceeding the quota of the town, who should enlist and be accepted and mustered into the United States service under said call. The plaintiff re-enlisted into the service of the United States, at Brandy Station, in Virginia, December 15, 1863, and was mustered into service on the 24th or 25th of the same month, the date of his muster-in being antedated on the roll to the 16th of said December.

The plaintiff introduced evidence tending to show that one Cook, who was then orderly sergeant of the company of which the plaintiff was then a member, wrote to different towns in this state, in behalf of the men of his company, inquiring what bounties they were severally paying, and that among others, said Cook wrote to William Rider, then one of the selectmen of Bristol, for Lucius Orcutt, one of the members of the same company, inquiring what bounty the town of Bristol would pay to volunteers who would enlist to the credit of that town, and received from said Rider a reply, prior to the enlistment of the plaintiff, stating that Bristol would pay $250 to such volunteers as should so enlist and be credited to said Bristol, and that said letter was read in the presence and hearing of said company ; that the plaintiff heard said letter so read, and relying upon the statements therein, and expecting to receive said bounty, did, thereupon, re-enlist and cause his name to be credited to said town of Bristol, reserving the right to change it to any other town before being mustered in.

It appeared further, that re-enlisted men had the privilege after enlistment, at any time before being mustered into service, to change their credit to any other town than the one to which they stood credited, and that the plaintiff, after his enlistment and

credit to the town of Bristol as aforesaid, and before being mustered in, upon learning that the town of Starksboro was paying a higher bounty than Bristol, directed the proper officer to change his credit from Bristol to Starksboro, and that he went on and served out his time until the close of the war, supposing that he was credited to the town of Starksboro; that after his discharge from service, in June, 1865, he applied to Starksboro for his bounty, and learned that his name did not stand to the credit of that town, but to Bristol, as he had first directed; that he then applied to the town of Bristol, which had received the benefit of his credit, and that Bristol refused to pay the bounty. This was the first notice he gave the town of Bristol that he had re-enlisted to its credit.

Upon the foregoing facts, the court directed a verdict for the defendant; to which the plaintiff excepted.

*J. W. Stewart*, for the plaintiff.

The only question in the case arises from the plaintiff's attempt to change his credit from Bristol to Starksboro. The right to change his credit was reserved, and there was an ineffectual attempt to exercise such right. He expressed a purpose, but the concurrent act necessary to make it effective, was not done, and the parties remained *in statu quo*. There is, then, no legal want of assent, for the subsequent execution of the contract by the plaintiff, relates to the assent expressed in the first step by the plaintiff, to wit, enlisting to the credit of Bristol, which step was never, in point of fact, retraced. The defendant has received the full consideration of its promise, and it would be a denial of justice to excuse payment.

*A. V. Spaulding* and *W. W. Rider*, for the defendant.

The case does not show any *contract* by the parties. On the contrary, it shows that there was none, and that there were no elements of a valid contract, such as to lay the foundation for a cause of action; consequently, there were no facts for the jury to find. 1 Parsons Cont. 5.

The case shows, conclusively, that the plaintiff was not mustered into the service, relying on the bounty that Bristol was promising to pay; but that he did not accept the offer of Bristol (if one

was made to him, which we deny ), and repudiated it wholly. · It makes no difference that his credit was not changed, as he directed ; so far as his own volition and intention in the matter *could* control and govern it, it was consummated. Under the vote of the town, two things were essential to entitle a party to a bounty ; first, a contract with the selectmen ; second, application on the quota of the town under the call named in the vote. The exceptions show neither of these conditions complied with by the plaintiff. *James* v. *Starksboro*, 42 Vt. 602 ; *Hicks* v. *Lyndon*, Ib. 606 ; *Johnson* v. *Bolton*, 43 Vt. 303 ; *Slack* v. *Craftsbury*, Ib. 657 ; *Bucklin* v. *Sudbury*, Ib. 700. Reasonable notice to the town of the plaintiff's re-enlistment, was necessary, even if he had otherwise complied with the conditions of the vote. *Bucklin* v. *Sudbury, supra.*

The opinion of the court was delivered by

PECK, J. It is insisted on the part of the defense that there was no evidence tending to show a contract between the plaintiff and the town for the payment of a bounty. But when the orderly sergeant of the company in which the plaintiff was serving in the field as a soldier in Virginia, wrote from there to Rider, select-·· man of Bristol, "inquiring what bounty the *town of Bristol would pay to volunteers who would enlist to the credit of that town*," it must have been understood by Rider from that letter that the information was wanted with the view of being acted on by soldiers then in the field, by re-enlistment to the credit of that town ; and when that selectman replied to that letter, " stating that Bristol would pay two hundred and fifty dollars to such volunteers as should so enlist and be credited to said Bristol," it must have been intended as a general offer to such soldiers then in the field as would comply with it ; at least, to the extent of the authority given by vote of the town, and that it might be so acted on ; and the plaintiff had a right so to understand it, and act upon it. Such has been the construction of language substantially like this, when incorporated in the vote of a town, although not in answer to any application on the subject. When the plaintiff afterwards heard the letter from that selectman read in the

presence and hearing of said company, and relying upon the statements therein, and expecting to receive said bounty, did thereupon re-enlist, " on the 15th December, 1863, and caused his name to be credited to said town of Bristol," he acted on the faith of, and in compliance with, the offer; and when, on the 24th or 25th of the same December, he was mustered in to the credit of Bristol, under date of the 16th of the same December, he had complied with all the terms expressed in the offer.

But it is insisted that the plaintiff, at the time of his enlistment, having reserved the right to change his credit to some other town before being mustered in, and having, within that time, directed the proper officer to change it to Starksboro, and having supposed during his service that it was so changed, thereby deprived himself of all claim on Bristol, which he otherwise might have had, although it was never changed, but remained to the credit of Bristol, and enured to its benefit. It appears that re-enlisted men had the right to change their credit after enlistment, before being mustered in. But the reservation of such right, unexercised, does not prejudice the plaintiff's claim. The change of the credit required an act to be done, to be evidenced by the record. A mere mental conclusion, or simple volition on the part of the plaintiff, was ineffectual to change the rights of the parties; nor did the direction to the proper officer to change the credit, give any additional force to such volition, as nothing was done to effect the change, or to prejudice the defendant in the full benefit of the credit as given in the enlistment; but, on the contrary, by the muster-in, the credit was irrevocably fixed to the benefit of the defendant town. If A. and B. enter into contract, with a right reserved to B. to rescind by giving notice to that effect within a specified time, and B., within the specified time, directs his agent to give such notice, which the agent wholly neglects to do; A. would thereby acquire no right to treat the contract as rescinded, against the will of B., even if B. had supposed, up to the time fixed for the performance of the contract, that the notice requisite to rescind the contract had been given as he directed. And most clearly the defendant cannot in this case so treat the reservation of the right to the

plaintiff to withhold his credit, between the enlistment and the muster-in, from the defendant, and have it placed to another town, from the simple fact that he directed it to be so done, when it was never done, and when the defendant has received the benefit of the full performance by the plaintiff. *Davis* v. *Landgrove*, 43 Vt. 442, is in point, as the same principle applies to a general offer made by the selectmen, by authority of the town, as to a general offer by vote of the town. *Williams* v. *Carwardine*, 4 B. & Ad. 621 ; S. C. 5 C. & P. 566.

But, it is claimed that it does not appear that the plaintiff applied on the quota of the town under the call for 300,000 men referred to in the vote. The exceptions are not very explicit in relation to this ; but it is stated that after the plaintiff was discharged from service, in 1865, he " applied to the town of Bristol, *which had received the benefit of his credit*, and that Bristol refused to pay the bounty." We understand this as a statement that the town of Bristol received the benefit of the plaintiff's credit ; and, in the absence of any evidence that he applied on any other quota, or that the town had any other quota to fill, we think it tends to show that he applied on the quota in question. It is also claimed on the part of the defense, that the plaintiff did not give seasonable notice to the town of his enlistment. But if the town had the benefit of his credit on the quota referred to in the vote, the inference is, in the absence of evidence to the contrary, that the town suffered no detriment for want of earlier notice ; and, if not, earlier notice was not necessary to the right of the plaintiff to recover.

The conclusion is that the county court erred in directing a verdict for the defendant. Judgment reversed, and new trial granted.